IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

```
_____
                               )
TRANSOCEANIC CABLE SHIP COMPANY LLC)
                               )
           Plaintiff,          )
                               )
    vs.                        )  Civ. No. 17-00209 ACK-KSC
                               )
JOSE FIESTA BAUTISTA, JR.      )
                               )
           Defendant.          )
_____)
```

# FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter arises under admiralty law. Plaintiff Transoceanic Cable Ship Company, LLC ("Transoceanic"), which owns the vessel C/S Decisive, filed a Complaint on May 8, 2015. ECF No. 1. Therein, Transoceanic sought a binding declaration that Defendant Jose Fiesta Bautista, Jr. ("Bautista") was no longer entitled to the payment of maintenance and cure benefits because any injuries Bautista had sustained while a crew member aboard the C/S Decisive had reached maximum medical cure, see id. at 6.[1]

---

[1] Transoceanic asserted two additional bases for declaratory relief in its Complaint, see ECF No. 1 at 6, but the parties agreed before trial that the only issue to be determined was that of maximum medical cure. See ECF No. 74 at 2; ECF No. 77 at 2-3.

The matter was tried without a jury[2] on August 14-16, 2018. The Court, having carefully considered the testimony of the witnesses and the exhibits in the record, and pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, makes the following Findings of Fact and Conclusions of Law. To the extent that a Finding of Fact constitutes a Conclusion of Law, the Court adopts it as such. And to the extent that a Conclusion of Law constitutes a Finding of Fact, the Court also adopts that assumption. See In re Bubble Up Delaware, Inc., 684 F.2d 1259, 1262 (9th Cir. 1982) ("The fact that a court labels determinations 'Findings of Fact' does not make them so if they are in reality conclusions of law.") (citation omitted).

I. **FINDINGS OF FACT**

   A. **The Parties**

   1. At all times material, Transoceanic has been a Delaware limited liability corporation with its principal place of business in Eatontown, New Jersey. ECF No. 1 ¶ 1.

   2. At all times material, Bautista has been a citizen and resident of the City and County of Honolulu, State of Hawai'i. ECF No. 1 ¶ 2; ECF No. 10 ¶ 2. Bautista was employed by Transoceanic and served as a crew member aboard the vessel C/S Decisive. ECF No. 1 ¶ 8; ECF No. 10 ¶ 8. Bautista was in

---

[2] Transoceanic initially demanded a jury trial, ECF No. 18, but the parties later stipulated to the withdrawal of that demand and the trial of this action without a jury, ECF No. 53.

service of the C/S Decisive for a period in 2015 that included March 15 through April 27, and ended by May 3, 2015. See ECF No. 1 ¶ 8; ECF No. 10 ¶ 8; Kaneshiro Tsti. Tr. 58:6-7; Bautista Tsti. Tr. 75:2-3.

**B. The Complaints and Assessments**

3. Prior to the period of his service aboard the C/S Decisive that included March 15-April 27, 2015, Bautista was adjudged to be 100% physically fit. Bautista Tsti. Tr. 7:20-21.

4. Bautista testified that, prior to the period of his service aboard the C/S Decisive that included March 15-April 27, 2015, he had never experienced problems with his neck, lower back, or right knee that were similar to those he complained of at the end of and after his 2015 service. Bautista Tsti. Tr. 7:13-21.

5. Bautista performed physically strenuous work aboard the C/S Decisive for twelve hours per day, and it was not uncommon for him to experience pain as a result of his work. Bautista Tsti. Tr. 12:2-8.

6. Following a shipboard incident on March 15 or 16, 2015, in which a large wave knocked Bautista over, he experienced pain but continued to work until April 26, 2015, at which point he stayed in bed for two days due to pain. Bautista

3

Tsti. Tr. 72:6-20, 85:11-12; see also Pl.'s Ex 4 at p. 85[3]; Pl.'s Ex. 2 at p. 9.

    7. During his sessions with Transoceanic's independent medical examiners, Drs. Kaneshiro and Scoggin, Bautista traced his lower back complaints (but not his neck or knee complaints) to the March 2015 incident. Pl.'s Ex. 4 at p. 75; Pl.'s Ex. 2 at p. 9; Kaneshiro Tsti. Tr. 39:2-6, 39:21- 25; 40:1-3; Scoggin Tsti. Tr. 119:13-18. At trial, however, Bautista testified that he injured his back, knee, and neck sometime before May 2, 2015, while working for Transoceanic aboard the C/S Decisive, but was unable to pinpoint a specific date or incident as the origin of his complaints. Bautista Tsti. Tr. 5:5-16, 6:14-20, 7:5-21, 8:3-10.

    8. On April 27, 2015, while aboard the C/S Decisive, Bautista consulted with a shipboard medical professional ("MDR") with complaints of back pain and right knee pain. Pl.'s Ex. 4 at pp. 67-68.

    9. On May 2, 2015, Bautista visited an emergency room in Halifax, Canada, where he complained again of back pain and right knee pain. Pl.'s Ex. 4 at p. 69.

    10. On the recommendation of the MDR, Bautista flew home to Hawai'i on or about May 3, 2015. Bautista Tsti. Tr. 74:24-

---

[3] Some of the parties' exhibits feature two or more page numbers. Where this occurs, the Court cites to the pagination that appears in the lower right-hand corner.

4

25, 75:2-3.  Once back in Hawaiʻi, Bautista visited a Dr. Prather on May 4, 2015.  Pl.'s Ex. 4, pp. 69-70; Bautista Tsti. Tr. 75:5-9.  Dr. Prather recorded Bautista's initial complaints of back pain and right knee pain and found on physical examination that Bautista had (inter alia) neck pain and cervical spasm; she ordered x-rays of his cervical spine, lumbosacral spine, and right knee.  Pl.'s Ex. 4 at pp. 69-70. On May 7, 2015, Dr. Prather ordered MRIs of Bautista's cervical spine, lumbosacral spine, and right knee.  Pl.'s Ex. 4 at p. 70.

   **C. Treatment**

   11.  Between June 2015 and July 2018, Bautista made regular visits to Dr. Nicanor Joaquin, an internist with no specialized training in orthopedics.  Bautista Tsti. Tr. 76:1-6; Joaquin Tsti. Tr. 30:8-25; Pl.'s Ex. 4 at pp.72-73; Pl.'s Ex. 2 at pp. 26-29, 36-53; Def.'s Ex. B.  Dr. Joaquin was Bautista's primary treatment provider for his back, right knee, and neck complaints following his service aboard the C/S Decisive.  See Kaneshiro Tsti. Tr. 50:5-6; Bautista Tsti. Tr. 76:1-6, 78:1-2.

   12.  Bautista also sought treatment from Dr. Jeffrey Lee, an orthopedist.  Bautista Tsti. Tr. 76:7-9.  On May 14, 2016, Dr. Lee performed a right-sided L4-L5 laminotomy and discectomy on Bautista.  Pl.'s Ex. 2 at p. 55; see also Scoggin Tsti. Tr. 114:12-17, 131:16-21; Bautista Tsti. Tr. 76:8-11.

13. For the year and a half preceding trial, the extent of Dr. Joaquin's treatment of Bautista had been regular office visits comprising only medication prescription and refills and subjective symptom assessment. Joaquin Tsti. Tr. 47:14-24, 51:11-16; 37:22-25, 38:1-14.

14. Bautista was taking a number of medications under Dr. Joaquin's care. Def.'s Ex B. at p.177-78[4], 191-92, 194, 198, 202. Some of these medications were for maladies unrelated to Bautista's back, neck, and knee complaints. Joaquin Tsti. Tr. 68:15-17. All the rest were related to pain relief. Joaquin Tsti. Tr. 68:18-20.

15. For well over a year before trial, Bautista had attended physical therapy once per week. Pl.'s Ex. 2 at p. 10; Joaquin Tsti. Tr. 50:7-10; Scoggin Tsti. Tr. 127:11-13. Dr. Joaquin had no knowledge of the details of Bautista's physical therapy, Joaquin Tsti. Tr. 50:2-6, and appears not to have requested, received, or studied any reports pertaining to Bautista's physical therapy, Joaquin Tsti. Tr. 41:7-14, 50:2-6.

16. On August 21, 2017, Dr. James F. Scoggin, III, who testified for Transoceanic as an expert in orthopedic surgery, conducted an independent medical examination of Bautista. Scoggin Tsti Tr. 111:4-7; Pl.'s Ex. 2 at p. 8. Bautista stated

---

[4] The first three pages of Defendant Bautista's Exhibit B are not Bates stamped. The Court designated these pages as pages 177-79.

6

to Dr. Scoggin that his physical therapy comprised only stretching and riding a stationary bicycle. Pl.'s Ex. 2 at p. 10; Scoggin Tsti. Tr. 127:11-17.

17. Dr. Joaquin, Bautista's treating physician, described Bautista's physical therapy as "maintenance therapy." Joaquin Tsti. Tr. 40:25, 49:18-19.

18. Dr. Scoggin testified that the modalities of physical therapy in which Bautista was engaging serve no medical purpose other than maintaining Bautista's general physical conditioning. Scoggin Tsti. Tr. 127:23-25, 128:1-2.

**D. Independent Medical Evaluations and Expert Testimony**

19. Dr. Steven A. Kaneshiro, who testified for Transoceanic as an expert in orthopedic surgery, examined Bautista on March 2, 2016. Kaneshiro Tsti. Tr. 33:4-13, 35:13-16; Pl.'s Ex. 4 at p. 67. Dr. Kaneshiro also reviewed Bautista's medical records history and took an oral medical history from Bautista, both generally and regarding Bautista's claimed injuries. Kaneshiro Tsti. Tr. 36:24-25, 37:1-11, 37:19-22.

20. Following his evaluation of Bautista, Dr. Kaneshiro issued a report on March 18, 2016, that included his answers to nine specific questions posed by Transoceanic. See Pl.'s Ex. 4 at pp. 85-87. All opinions given in response to those questions

were expressed to a reasonable degree of medical probability. Kaneshiro Tsti. Tr. 46:25, 47:1-4.

21. Dr. Kaneshiro concluded that, as of the date of his examination, Bautista's back had "not resolved or reached maximum medical improvement." Pl.'s Ex. 4 at p. 86.

22. As part of his medical records review, Dr. Kaneshiro examined an MRI scan of Bautista's right knee, taken on May 19, 2015, and saw nothing that required additional treatment or indicated an injury that required attention. Kaneshiro Tsti. Tr. 44:10-12, 44:19-21; Pl.'s Ex. 4 at p. 86. Dr. Kaneshiro concluded that Bautista's right knee had resolved as of March 2, 2016, and did not require further evaluation or treatment. Pl.'s Ex. 4 at p. 87; Kaneshiro Tsti. Tr. 45:24-25, 46:1.

23. Dr. Kaneshiro opined that there was no objective evidence that Bautista had suffered a neck injury. Kaneshiro Tsti. Tr. 42:5-8; 43:22-25, 44:1-5.

24. In his physical examination of Bautista's neck, back, and lower extremities, Dr. Kaneshiro noted pain behaviors,[5] but did not at that time judge Bautista's pain behaviors to be an

---

[5] Dr. Kaneshiro testified that pain behaviors are verbal and nonverbal communications by a patient that he is experiencing pain, and that in some cases such behaviors can corroborate the findings of the physical examination, while in others they can indicate exaggeration of subjective pain. Kaneshiro Tsti. Tr. 35:25, 36:1-6.

exaggeration of his symptoms. Pl.'s Ex. 4 at pp. 79-80, 83; Kaneshiro Tsti. Tr. 36:9-11, 46:3-5.

25. Dr. Scoggin examined Bautista on August 21, 2017. Scoggin Tsti. Tr. 111:4-7; 113:4-7; Pl.'s Ex. 2 at p. 8. Dr. Scoggin also reviewed Bautista's medical records and took an oral history from Bautista. Pl.'s Ex. 2 at pp. 8-12.

26. Following his evaluation of Bautista, Dr. Scoggin issued a report on November 22, 2017, that included his answers to ten specific questions posed by Transoceanic. See Pl.'s Ex. 2 at pp. 58-62. All opinions given in response to those questions were expressed to a reasonable degree of medical probability. Pl.'s Ex. 2 at p. 62.

27. Dr. Scoggin opined in his report that Bautista's low back injury had reached maximum medical improvement as of the date of Dr. Scoggin's examination. Pl.'s Ex. 2 at 59; Scoggin Tsti. Tr. 135:2-4. In response to the question, "Does Mr. Bautista require further medical treatment for any injury(ies)/condition(s) caused by the shipboard accident[?]", Dr. Scoggin concluded that "[n]o further formal medical treatment is indicated, necessary, or appropriate." Pl.'s Ex. 2 at p. 60.

28. Bautista told Dr. Scoggin that he felt his knee pain was radiating from his low back. Pl.'s Ex. 2 at p. 10; Scoggin Tsti. Tr. 130:24-25, 131:1. In his report, Dr. Scoggin stated

9

that there was no objective evidence of a right knee injury, Pl.'s Ex. 2 at p. 59; see also Scoggin Tsti. Tr. 134:11-12, and opined that Bautista's right knee condition had reached maximum medical improvement as of the date of his examination, Pl.'s Ex. 2 at p.59-60; see also Scoggin Tsti Tr. 136:23-25.

29. Dr. Scoggin testified that further medical treatment would not result in the betterment of Bautista's condition. Scoggin Tsti. Tr. 135:15-18.

30. Like Dr. Kaneshiro, Dr. Scoggin testified that he did not believe that Bautista had suffered a neck injury. Scoggin Tsti. Tr. 147:7-8, 148:6-7. Dr. Scoggin also testified that there were no objective injury findings as to Bautista's neck, and that the likeliest cause of Bautista's neck complaints was degenerative changes in his spine. Scoggin Tsti. Tr. 149:25, 150:1-6.

31. In the course of his examination of Bautista's back, Dr. Scoggin made six positive Waddell's findings—i.e., findings of subjective pain with nonanatomical causes—which made Dr. Scoggin concerned that Bautista may have been exaggerating his complaints. Pl.'s Ex. 2 at 56; Scoggin Tsti. Tr. 116:4-12, 117:10, 118:7-18.

32. On January 22, 2018, Dr. Kaneshiro reviewed Dr. Scoggin's written report, as well as the office notes and operator reports by Dr. Lee (Bautista's surgeon) and Dr. Joaquin

(Bautista's primary treating provider) that were prepared between March 2, 2016 and January 22, 2018. Kaneshiro Tsti. Tr. 49:18-23, 50:3-6, 51:10-18.

33. Dr. Kaneshiro then prepared an addendum to his original evaluation report. Kaneshiro Tsti. Tr. 50:7-12; Pl.'s Ex. 5. In his addendum report, Dr. Kaneshiro agreed with Dr. Scoggin's findings and conclusions as laid out in the latter's November 22, 2017 report: inter alia, that Bautista's lower back and right knee conditions had reached maximum medical improvement, and that no further formal treatment was indicated, necessary, or appropriate. Pl.'s Ex. 5 at p. 104; Kaneshiro Tsti. Tr. 52:4-15; Pl.'s Ex. 2 at p. 60.

34. Upon reviewing Bautista's additional medical records and Dr. Scoggin's report, Dr. Kaneshiro formed the opinion in January 2018 that the pain behaviors he observed in March 2016 may have been indicative of symptom magnification. Kaneshiro Tsti. Tr. 36:13-23. Dr. Kaneshiro noted in his testimony that a person may magnify his symptoms either unknowingly or knowingly. Kaneshiro Tsti. Tr. 76:22-25.

## II. CONCLUSIONS OF LAW

### A. General Maritime Law

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1333, which provides original jurisdiction over admiralty or maritime claims, and 28 U.S.C. § 2201(a), which

empowers district courts to issue declaratory judgments. Venue is proper under 28 U.S.C. § 1391 because this Court has personal jurisdiction over the defendant.

2. The matter before the Court is whether the injuries Bautista sustained while working aboard the C/S Decisive have reached maximum medical cure.

3. "Under principles of general maritime law, seamen are entitled to maintenance and cure from their employer for injuries incurred in the service of the ship[.]" Aguilera v. Alaska Juris F/V, O.N.569276, 535 F.3d 1007, 1009 (9th Cir. 2008) (alteration in original) (citation and internal quotation marks omitted). "Maintenance is the reasonable cost for food and lodging, and cure is the reasonable cost of medical expenses incurred by a seaman until he reaches maximum medical improvement." Lovell v. Master Braxton, LLC, No. CV 15-3978, 2016 WL 6819043, at *5 (E.D. La. Nov. 18, 2016) (citing Hall v. Noble Drilling Inc., 242 F.3d 582, 586-87 (5th Cir 2001)).

**B. Cure and Maximum Medical Cure**

4. A shipowner's obligation to pay "[m]aintenance and cure . . . extends during the period when [a seaman] is incapacitated to do a seaman's work and continues until he reaches maximum medical recovery." Vaughan v. Atkinson, 369 U.S. 527, 531 (1962).

5. A seaman has reached maximum medical recovery (also known as maximum medical cure or maximum medical improvement) "where it is probable that further treatment will result in no betterment in the claimant's condition." Rashidi v. Am. President Lines, 96 F.3d 124, 128 (5th Cir. 1996) (citation omitted).

6. Treatment need not be intended to return a seaman to work in order to be considered "curative." A seaman suffering from permanent and incurable conditions is entitled to maintenance and cure until the point his "condition has stabilized and further progress ended short of a full recovery." In re RJF Int'l Corp., 354 F.3d 104, 106 (1st Cir. 2004) (holding that where a seaman suffered a serious brain injury which reduced his mental capacity to that of an 18-24 month old, treatment which had the potential to provide cognitive improvement and help the seaman cope with muscle spasticity and contraction was "curative"); Permanente S. S. Corp. v. Martinez, 369 F.2d 297, 298 (9th Cir. 1966) (stating that maximum cure is reached when "the seaman is well or his condition is found to be incurable").

7. A shipowner's cure obligations do not extend to paying for treatments that are merely palliative. See Stanovich v. Jurlin, 227 F.2d 245, 246 (9th Cir. 1955). Treatments that serve only to relieve pain and suffering are not included within

13

the scope of "cure." See Barto v. Shore Const., LLC, 801 F.3d 465, 477 (5th Cir. 2015) (citation omitted); see also Light v. Jack's Diving Locker, No. CIV.05-00706 BMK, 2007 WL 4321715, at *1 (D. Haw. Dec. 11, 2007) ("A vessel's owner is not liable for care that is only [in]tended to reduce pain, or which is not calculated to help cure the underlying medical condition.") (citing Whitman v. Miles, 387 F.3d 68, 71 (1st Cir. 2004)).

8. Transoceanic, as the shipowner, bears the burden of proving by a preponderance of the evidence that Bautista has reached maximum cure in relation to the injuries he sustained in service of the vessel. Debbie Flo, Inc. v. Shuman, 2014 A.M.C. 840 (D.N.J. 2014) ("It is the vessel owner's burden to prove that MMI, or maximum cure, has been attained by the injured seaman.") (citing Smith v. Delaware Bay Launch Serv., Inc., 972 F. Supp. 836, 848 (D. Del. 1997)); Haney v. Miller's Launch, Inc., 773 F. Supp. 2d 280, 290 (E.D.N.Y. 2010) (stating that the employer has the burden of showing the seaman has reached maximum cure); Hedges v. Foss Mar. Co., No. 3:10-CV-05046 RBL, 2015 WL 3451347, at *5 (W.D. Wash. May 29, 2015) (collecting cases); Zermeno v. N. Pac. Fishing, Inc., No. C16-1540RSL, 2017 WL 4843484, at *2 (W.D. Wash. Oct. 26, 2017) ("[I]t is the shipowner's burden to prove by a preponderance of the evidence that plaintiff reached maximum cure . . . .").

14

9. "Whether a seaman has reached maximum medical cure is a medical question[.]" Rashidi, 96 F.3d at 128 (citation omitted).

10. If any doubt exists as to whether a seaman is entitled to coverage, whether particular medical treatment is necessary, or whether maximum cure has been reached, courts generally resolve such doubt in favor of the seaman. See, e.g., Moore v. The Sally J., 27 F. Supp. 2d. 1255, 1262 (W.D. Wash. 1998) (citations omitted); see also Vaughn v. Atkinson, 369 U.S. at 532.

11. Here, the evidence is ambiguous as to whether Bautista suffered a right knee injury in service of the C/S Decisive. Following Vaughn, 369 U.S. at 532, the Court resolves this ambiguity in Bautista's favor and concludes that Bautista did suffer a knee injury that entitled him to maintenance and cure.

12. The Court draws the above conclusion in light of the fact that Bautista's medical records reflect that he reported knee pain while still aboard the C/S Decisive, Pl.'s Ex. 2 at p. 13; Pl.'s Ex. 4 at p. 68.

13. This fact creates an ambiguity, even in light of the countervailing facts that: (1) Bautista stated to Dr. Scoggin that his knee pain radiated from his low back, Pl.'s Ex. 2 at p. 10; Scoggin Tsti. Tr. 130:24-25, 131:1; (2) Dr. Scoggin stated unequivocally that there was no objective evidence of knee

15

injury, Pl.'s Ex. 2 at p. 59; see also Scoggin Tsti. Tr. 134:11-12; and (3) Dr. Kaneshiro opined that he saw nothing in the contemporaneous MRI "that would require any additional treatment or [indicated] an injury that required attention," Kaneshiro Tsti. Tr. 44:19-21.

14. The Court further concludes that Bautista suffered a back injury in service of the C/S Decisive. Not only does Plaintiff not dispute this point, but Bautista complained of back pain during the term of his service aboard the C/S Decisive. Pl.'s Ex. 2 at p. 13-14. Dr. Kaneshiro opined in his initial report that surgery was appropriate for Bautista's low back complaints, Pl.'s Ex. 2 at p. 87, which indicates to the Court that Dr. Kaneshiro believed there was objective evidence of injury.

15. The Court concludes that Bautista's right knee and back injuries reached maximum medical cure as of August 21, 2017.

16. These medical determinations were made by Dr. Scoggin, Pl.'s Ex. 2 at 59-60; Scoggin Tsti Tr. 135:2-4, 136:23-25, and corroborated by Dr. Kaneshiro, Pl.'s Ex. 5 at p. 104; Kaneshiro Tsti. Tr. 52:4-15. No medical expert testified to the contrary. In fact, Dr. Joaquin, Bautista's treating physician, testified that Bautista's lower back "has been taken care of." Joaquin Tsti. Tr. 8:9-10.

17. Moreover, the Court notes that Bautista's condition appears to be stable and unlikely to change; in other words, the Court finds by a preponderance of the evidence that further treatment will result in no betterment of Bautista's knee and back conditions. See Rashidi, 96 F.3d at 128 (citation omitted). Bautista's 2018 medical records reveal virtually no variance in his condition between January and July 2018. Def.'s Ex. B. Bautista has engaged in the same course of physical therapy for well over a year before trial, Joaquin Tsti. Tr. 50:7-10; Dr. Joaquin, Bautista's treating physician, described the physical therapy as "maintenance therapy," Joaquin Tsti. Tr. 40:25, 49:18-19, and Dr. Scoggin opined that the therapy has no medical value beyond general physical conditioning, Scoggin Tsti. Tr. 127:23-25, 128:1-2. This physical therapy appears to have resulted in no improvement in Bautista's condition. And for at least the year and a half prior to trial, Dr. Joaquin's treatment of Bautista's ailments has been palliative rather than curative, comprising the prescription of medications intended to relieve pain and regular office visits at which Bautista's subjective symptoms are assessed. Joaquin Tsti. Tr. 47:14-24, 51:11-16; 37:22-25, 38:1-14, 68:11-20.

18. The Court further concludes that Bautista suffered no neck injury during his service aboard the C/S Decisive.

19. Both of the testifying expert orthopedic surgeons concluded that Bautista suffered no neck injury at all. Kaneshiro Tsti. Tr. 42:5-8; 43:22-25, 44:1-5; Scoggin Tsti. Tr. 147:7-8, 148:6-7. Drs. Kaneshiro and Scoggin drew this conclusion after examining Bautista and reviewing his medical records. See Kaneshiro Tsti. Tr. 35:13-16, 37:19-22; Scoggin Tsti. Tr. 113:4-7; Pl.'s Ex. 2 at pp. 8-12. Both testified that there were no objective findings of neck injury, Kaneshiro Tsti. Tr. 42:5-8; 43:22-25, 44:1-5; Scoggin Tsti. Tr. 149:25, 150:1-6, and Dr. Scoggin opined that degenerative changes to Bautista's spine were the likeliest cause of his neck complaints, Scoggin Tsti. Tr. 149:25, 150:1-6. Bautista presented no medical expert testimony to refute these conclusions. Moreover, Bautista did not make subjective complaints of neck pain until after the end of his service aboard the C/S Decisive, Pl.'s Ex. 4 at pp. 67-70, and was unable to link his neck complaints to any occurrence that took place aboard ship, Bautista Tsti. Tr. 5:-16, 8:3-10. On the basis of these facts, the Court has no doubt in concluding that Bautista did not incur a neck injury in service of the C/S Decisive.

20. The Court notes that on May 4, 2015, Dr. Prather indicated a finding of cervical spasm and assessed a cervical strain, Pl.'s Ex. 4 at pp. 69-70. Dr. Prather then ordered x-rays and MRIs, including of Bautista's cervical spine. Id.

Drs. Kaneshiro and Scoggin both examined the resultant imaging, see Kaneshiro Tsti. Tr. 37:19-22; Pl.'s Ex. 2 at p. 8, and both concluded that there was no objective evidence of neck injury, Kaneshiro Tsti. Tr. 42:5-8, 43:22-25, 44:1-5; Scoggin Tsti. Tr. 149:25, 150:1-2.  Therefore, the Court holds in the alternative that, in the event Bautista did suffer a neck injury on board the C/S Decisive, any such injury no longer existed as of the date of Dr. Scoggin's examination.

## III. SUMMARY

On the basis of the foregoing Findings of Fact and Conclusions of Law, the Court concludes that all of the injuries Bautista incurred in service of the C/S Decisive have reached maximum medical cure.  Judgment shall issue in favor of Transoceanic and against Bautista.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, September 5, 2018.



Alan C. Kay
Sr. United States District Judge

Transoceanic Cable Ship Co. v. Bautista, Civ. No. 17-00209 ACK-KSC, Findings of Fact and Conclusions of Law.